**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| TYLER ALEXANDER, THOMAS CALEB BELL, RODNEY BELL, DILLON BUDDE, ROBERT CARPENTER, BRYAN CARR, JAMES CORTESE, RYAN DIVIS, AARON GALLICK, PETER GILDEA, ZACHARY HAUSER, MARK HERSOM, OLIVIA KAPLAN, STEVE KURY, DANIEL MAY, ROBERT NEREM, JEFFREY POSTMA, TIMOTHY SINNWELL, DAVID STOCKWELL, KARI SULLIVAN, COLBY TILL, FELIX VANDERBRINK, NATHAN WITTENSTEIN, AND ISAAC YOUNG,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., a foreign Entity, WELLS FARGO & COMPANY, a California corporation, and WELLS FARGO & COMPANY SALARY CONTINUATION PAY PLAN, an ERISA-governed welfare benefit plan,<br><br>Defendants. | Court File No: 4:20-cv-00044-RGE-HCA<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUBSTITUTED COMPLAINT AND JURY DEMAND** |

Wells Fargo Bank, N.A., Wells Fargo & Company, and Wells Fargo & Company Salary Continuation Pay Plan (collectively "Defendants"), by counsel, submit this Memorandum in Support of their Partial Motion to Dismiss Plaintiffs' Amended and Substituted Complaint and Jury Demand ("Amended Complaint"), pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that Plaintiffs' claims for benefits under Count II of the

Amended Complaint are barred due to the Plaintiffs' failure to timely file claims for benefits as required by the plain language of the Plan document, and states:

## I. INTRODUCTION

This is a suit for the payment of salary continuation benefits under an employee severance benefit plan ("Plan") sponsored by Wells Fargo & Company ("Wells Fargo") incident to their employment with Wells Fargo Bank, N.A. [*See* Doc. 25, Amended Complaint, ¶¶ 1, 45.] The Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 *et. seq.*, governs the Plan and Plaintiff's claims under Count II of the Amended Complaint. [*See* Doc. 25, ¶ 1.]

As demonstrated below, Plaintiffs' claims for benefits under the Plan in Count II of their Amended Complaint should be dismissed because Plaintiffs failed to timely file their claims for benefits within the deadline provided in the Plan. This defect is fatal to Count II of Plaintiffs' Amended Complaint and cannot be cured. Accordingly, Count II of Plaintiffs' Amended Complaint should be dismissed with prejudice.

## II. RELEVANT DOCUMENTS

"The United States Supreme Court and the Eighth Circuit Court of Appeals have both recognized a court considering a Rule 12(b)(6) motion may analyze the complaint in its entirety, as well as documents and 'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'" *Summers Mfg. Co., Inc. v. Tri-Cty. AG, LLC*, 300 F. Supp. 3d 1025, 1035 (S.D. Iowa 2017) (quoting *United States ex rel. Ambrosecchia v. Paddock Labs., LLC*, 855 F.3d 949, 954 (8th Cir. 2017) (internal citations omitted)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, (2007). Documents "necessarily embraced by the complaint" may be considered in ruling on a Rule 12(b)(6) motion to dismiss. *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066,

1069 (8th Cir. 2004). This includes "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quotation omitted); *see also Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).

Plaintiffs' Amended Complaint repeatedly references the Plan, the April 12, 2019 and December 11, 2019 letters submitting the claims under the Plan, the Plan's claim decisions, their appeals, and the Plan's appeal decisions. [Complaint, ¶¶ 1, 33, 52-69, 72-77, 78, 80-85.] Accordingly, these documents are embraced by the Complaint and may properly be considered by this Court. *See e.g.*, *Van Natta v. Sara Lee Corp.*, 439 F. Supp. 2d 911, 922 n.3 (N.D. Iowa 2006).

The Plan document and claim letters are authenticated by the Declaration of Anita Steward ("StewardDecl."), attached as Exhibit A.

### III.     FACTUAL BACKGROUND

The relevant allegations in Plaintiffs' Amended Complaint[1] and the information contained in the documents referenced in the Amended Complaint are as follows:

Plaintiffs previously worked for Wells Fargo Bank, N.A. in the Premier ONE Home Mortgage Division. [Doc. 25, ¶¶ 7-30.] On November 7, 2018, Wells Fargo terminated 23 Premier ONE team members, including Plaintiffs in this action, for violations of Wells Fargo's Employment Policy. [Doc. 25, ¶¶ 49, 52, 54.] Following the Plaintiffs' employment termination on November 7, 2018, Plaintiffs, with the exception of Plaintiff Sullivan, submitted claims for benefits under the Plan on April 12, 2019. [Doc. 25, ¶ 56.] Plaintiff Sullivan submitted a claim for benefits on December 11, 2019. [Doc. 25, ¶ 58.] Thereafter, the Plan Administrator denied

---

[1] Plaintiffs' allegations are taken as true solely for purposes of this Motion to Dismiss. Defendants reserve the right to challenge the truth of the allegations at a later stage in this case, if necessary.

3

Plaintiffs' claims for benefits on August 15, 2019 for all Plaintiffs except for Plaintiff Sullivan, whose claim for benefits was denied on March 16, 2020. [Doc. 25, ¶¶ 57, 59.]

In the August 15, 2019 letters to all Plaintiffs except Plaintiff Sullivan, Wells Fargo denied Plaintiffs' claims for benefits, stating:

> [Plaintiff's] employment was terminated on November 7, 2018. The discontinuation of a team member's employment, initiated by Wells Fargo, for violations of company policy is a Disqualifying Event under the Plan. As a result of [his/her] termination, on November 7, 2018 [Plaintiff] would have learned that there was no salary continuation pay benefit available to [him/her]. From that date, [Plaintiff] would have had 90 days to file a written claim with the Plan Administrator. [Plaintiff's] claim under the Plan was received on April 12, 2019, which was 34 days outside of the 90 day defined time period.
>
> Based on the facts and the relevant Plan provisions, I must conclude that [Plaintiff] is not eligible for Salary Continuation Pay Plan benefits.[2]

[Exhibit A-1, letter dated August 15, 2019; Doc. 25, ¶ 57.] In the March 16, 2020 letter to Plaintiff Sullivan, Wells Fargo denied her claim for benefits under the Plan, stating:

> Ms. Sullivan's employment was terminated on November 7, 2018. The discontinuation of a team member's employment, initiated by Wells Fargo, for violations of company policy is a Disqualifying Event under the Plan. As a result of her termination, on November 7, 2018 Ms. Sullivan would have learned that there was no salary continuation pay benefit available to her. From that date, Ms. Sullivan would have had 90 days to file a written claim with the Plan Administrator. Ms. Sullivan's claim under the Plan was received on January 7, 2020, which was 336 days outside of the 90 day defined time period.[3]
>
> Based on the facts and the relevant Plan provisions, I must conclude that Ms. Sullivan is not eligible for Salary Continuation Pay Plan benefits.

[Exhibit A-2, letter dated March 16, 2020; Doc. 25, ¶ 59.]

The decisions were consistent with the Plan, which provides:

> 6.1    Claims Procedures. Any Participant who believes that he or she is entitled to a Plan benefit or a greater Plan benefit may submit a claim for benefits to the

---

[2] Despite the August 15, 2019 letters stating that Plaintiffs were 34 days out of time, they were actually 65 days out of time to file their claims for benefits. Under the plain language of the Plan, Plaintiffs were required to submit their claim for benefits within 90 days from their November 7, 2018 date of termination, by February 6, 2019.

[3] The submission was well beyond the 90 day deadline even if the December 11, 2019, date alleged in the Amended Complaint was used rather than the January 7, 2020 receipt date.

> Plan Administrator. The claim should be filed within ninety (90) days of (i) the date the Participant learns that amount of Plan benefits available to the Participant under the Plan or (ii) the date the Participant learns that there will be no Plan benefit available to the Participant under the Plan.

[Exhibit A-3, Plan document, p. 17.]

These decisions were also consistent with the Summary Plan Description ("SPD"), which provides:

> *Filing a Claim*
> Normally, salary continuation pay will automatically be paid to all eligible participants who qualify under the Plan. However, if you have not received this benefit and you believe that you are entitled to it, or if you believe you are entitled to a larger benefit than you are eligible to receive, you may file a written claim with the plan administrator. For Position Eliminations and Qualified Events relating to a return from a Qualified Medical Leave, you must file a written claim within 90 days of either of the following:
>
> • The date you learn the amount of salary continuation pay benefit available to you under the Plan
>
> • The date you learn that there will be no salary continuation pay benefit available to you under the Plan

[Exhibit A-4, SPD, p. 11.] This provision of the SPD was set forth in the claim denial letters dated August 15, 2019 and March 16, 2020. [Exhibits. A-1 and A-2.] The SPD further states "In the event of any discrepancy between the Plan document and the Summary Plan Description, the provisions of the Plan document will govern." [Exhibit A-4, SPD, p. 2.]

As explained in the August 15, 2019 and March 16, 2020 claim denial letters, Plaintiffs were terminated for violations of company policy and learned that they would not receive benefits under the Plan on November 7, 2018. [Exhibits A-1 and A-2.] Consequently, Plaintiffs had 90 days from November 7, 2018, or until February 6, 2019, to file their claims. Plaintiffs failed to meet this deadline and waited until April 12, 2019 (and December 11, 2019 for Plaintiff Sullivan) to file their claims for benefits.

Thereafter, all of the Plaintiffs except for Plaintiff Sullivan filed an appeal of the decision to deny benefits on September 5, 2019. [Doc. 25, ¶ 61; Exhibit A-5.] Plaintiffs appealed the decision to deny benefits under the Plan on three inconsistent grounds: (1) a Disqualifying Event under the Plan did not occur because Plaintiffs' jobs were terminated as a result of a position elimination; (2) Plaintiffs received no notice of the 90-day time limit to file a claim under the Plan; and (3) the 90-day deadline did not apply to Plaintiffs because the Plan provides that the deadline only applies to position eliminations and Qualified Events. [Exhibit A-5.] On March 24, 2020, Plaintiff Sullivan appealed the decision to deny her benefits under the Plan on the same basis. [Doc. 26, ¶ 63; Exhibit A-6.] The Plan Administrator denied their appeals on October 31, 2019 for all Plaintiffs except Plaintiff Sullivan and on May 21, 2020 for Plaintiff Sullivan. [Doc. 25, ¶¶ 62, 64.]

## II. STANDARD OF REVIEW

A motion to dismiss must be granted if the Complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007). In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court promulgated heightened pleading standards that govern pleadings in all civil actions. Under these heightened pleading standards, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" in order survive dismissal. *Twombly*, 550 U.S. at 570. Under this standard, "factual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing 5 C. WRIGHT & A. MILLER, FED. PRAC. & PROC. § 1216, pp. 235-236 (3d ed. 2004)). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

A plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than mere labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly*, 550 U.S. at 555. In fact, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989)

### III. ARGUMENT

#### A. PLAINTIFFS' UNTIMELY CLAIM FOR BENEFITS IS FATAL.

Plaintiffs' claim for Plan benefits (Count II of Amended Complaint) must be dismissed because Plaintiffs cannot allege that they complied with the Plan's requirements to receive benefits. The Plan provides, "A Participant shall qualify for Salary Continuation Pay if the Participant (1) experiences a Qualifying Event, (2) he/she timely executes and does not rescind the Agreement and Release provided pursuant to Section 4.3 of this Plan, and (3) he/she is not disqualified under Section 3.2." [Exhibit A-3, Plan, Sec. 4.1, p. 12.] "Normally, salary continuation pay will automatically be paid to all eligible participants who qualify under the Plan. " [Exhibit A-4, SPD, p. 11.] The Plan and SPD show that written notice will be provided to a participant that experienced a Qualifying Event that entitles him or her to benefits under the Plan. [Exhibit A-3, Plan, Sec. 2.15 "Notice Period. For all Participants, this is the period of time communicated to the Participant in a written notice of a Qualifying Event…" and Exhibit A-4, SPD, p. 6, "If you are an eligible participant, have a Qualifying Event, and timely sign the Agreement and Release (the Agreement) provided to you in your displacement packet . . You will be placed on a Salary Continuation Leave and begin receiving salary continuation pay when

7

your Notice Period ends."] Section 4.3 of the Plan further provides, "Each Participant eligible for a SCL Leave has forty-five (45) days beginning on the first day of the Participant's Notice Period to consider the terms of the Agreement. . . In no event shall Salary Continuation Pay begin prior to the Participant's timely execution of the Agreement, the expiration of the Revocation Period, and the completion of the Notice Period." [Exhibit A-3, Sec. 4.3(a), pp. 12-13.] In addition to being notified of termination on the basis of conduct that would be a disqualifying event under the Plan, Plaintiffs do not allege and cannot prove that they ever received either written notice of a Qualifying Event or an Agreement and Release prior to or at the time of their termination on November 7, 2018.

      Plaintiffs cannot prove any set of facts that would entitle them to benefits under the Plan. They clearly filed their claims too late to obtain benefits under the Plan. All of the Plaintiffs were terminated for cause on November 7, 2018. Under the Plan, no benefits were payable. [Exhibit A-3, Section 3.2(h) Disqualifying Events, p. 10-11 ("A Participant becomes immediately ineligible for Salary Continuation Pay and SCL Leave under the Plan if any of the following events or circumstances occurs . . . (h) The Participant is discharged for any reason other than a Qualifying Event (including, but not limited to, poor performance, violation of the Company's Code of Ethics and Business Conduct or the Participating Employer's employment policies), whether or not the Participant had already received notice of a Qualifying Event …").] Thus, no salary continuation payment was automatically issued or promised to Plaintiffs. Per the Plan, any claims for benefits were due within 90 days, or by February 6, 2019. [Exhibits A-3, Plan, Sec. 6.1 and A-4, SPD, p .11.] All of the Plaintiffs with the exception of Plaintiff Sullivan filed their claims on April 12, 2019, more than two months out of time. [Doc. 25, ¶ 56; Exhibit A-1.] Plaintiff Sullivan filed her claim on December 7, 2019, well over one year out of time. [Doc. 25, ¶ 58; Exhibit A-2.]

Under the plain language of the Plan, any other conclusion would be inconsistent with the clear and unambiguous terms of the Plan. The Amended Complaint does not allege that Plaintiffs could not comply with the terms of the Plan. They do not allege that the Plan Administrator's decision and interpretation of the Plan was unreasonable. Further, nothing in the Plan or in ERISA requires or even allows the Plan Administrator to apply different deadlines depending on an individual claimant's circumstances. "Where a claimant fails to pursue and exhaust administrative remedies that are clearly required under a particular ERISA plan, his claim for relief is barred." *Layes v. Mead Corp.*, 132 F.3d 1246, 1252 (8th Cir. 1998) (granting judgment for plan on plaintiff's claim for salary continuation benefits when plaintiff failed to apply for the benefits within the time allowed by the plan). As recently as July 1, 2020, the Eighth Circuit upheld a decision to deny benefits based on the failure to abide by a plan's requirement to file a claim at the time of the plaintiff's termination of employment. *DaPron v. Spire Missouri, Inc.*, ____ F.3d ____, 2020 WL 3550693, at *1-2 (8th Cir. 2020)

Plaintiffs appealed the decision to deny their claim for salary continuation benefits on three grounds: (1) a Disqualifying Event under the Plan did not occur because Plaintiffs' jobs were terminated as a result of a position elimination; (2) Plaintiffs received no notice of the 90-day time limit to file a claim under the Plan; and (3) the 90-day deadline did not apply to Plaintiffs because the Plan provides that the deadline only applies to position eliminations and Qualified Events. In the Amended Complaint, Plaintiffs allege they were notified of a termination for cause on November 7, 2018. [Doc. 25, ¶¶ 49, 52, 54, 72.] Plaintiffs dispute the termination for cause reason provided and claim they were terminated as part of a position elimination on November 7, 2018. [Doc. 25, ¶¶ 49-55, 79, 80, 82, 83.] Thus, by Plaintiffs' own allegations and consistent with the appeal arguments, they claim benefits were due as a result of a position elimination rather than a Disqualifying Event. [*Id.*] The allegation of termination being

due to a position elimination is incorrect, but taking it as true for purposes of a motion to dismiss review as the Court must do, Plaintiff's own admissions confirm the Plan required submission of a claim within 90 days of Plaintiffs' termination date. [Exhibits A-3 at 17 and A-4 at 11; Exhibits A-5 and A-6.]

Plaintiffs fail to make any allegations in the Amended Complaint that they did not receive notice of their termination or the basis of same. Plaintiffs clearly admit that they were terminated for cause and as a result of company violations on November 7, 2018. [Doc. 25, ¶¶ 7-30, 49, 52, 54.] Their terminations put them on notice that the deadline for the filing of their claims for benefits under the Plan started to run. *See Layes*, 132 F.3d at 1252 (affirming grant of judgment to plan on plaintiff's claim for salary continuation benefits that expired on the termination of the employment relationship when plaintiff admitted the date his employment ended and failed to file for benefits).

Here, the Plan Administrator appropriately enforced the terms of the Plan. There is no duty to individually notify participants of the general terms of the Plan. *DaPron v. Spire, Inc. Retirement Plans Comm.*, 377 F. Supp. 3d 946, 961 (E.D. Mo. 2019), *aff'd* ____ F.3d ____, 2020 WL 3550693 (8th Cir. July 1, 2020) (citing *Maxa v. John Alden Life Ins. Co.*, 972 F.2d 980, 986 (8th Cir. 1992).

Plaintiffs' Amended Complaint and the documents referenced therein conclusively establish the failure to timely submit claims to the Plan Administrator, a fatal defect that they cannot now cure. [Doc. 25, ¶¶ 49, 56, 58; Exhibits A-1 through A-6]; *see Pendleton v. QuikTrip Corp.*, 567 F.3d 988, 993 (8th Cir. 2009) (granting judgment in favor of defendant when plaintiff could not make threshold showing that he was eligible for severance benefits under the plain language of the plan); *Layes*, 132 F.3d at 1252. As detailed above, the Plan and SPD clearly provide a 90-day deadline for submitting a claim for benefits. All of the Plaintiffs were required

to submit their claims no later than February 6, 2019. All Plaintiffs except Kari Sullivan submitted their claims on April 12, 2019, more than 60 days out of time. [Doc. 25, ¶ 56.] Kari Sullivan waited until December 11, 2019 to submit her claim, which was more than one year out of time. [Doc. 25, ¶ 58.] All Plaintiffs allege that their terminations resulted from a position elimination. [Doc. 25, ¶¶ 49-55, 60, 79, 80, 82, 83.] The Plan Administrator applied the plain language of the Plan and properly concluded that their claims for benefits were untimely. [Exhibits A-1 and A-2.] Thus, they were not entitled to any benefits under the Plan because their claims were time-barred.

Plaintiffs cannot now cure their ultimate failure to timely file an initial claim for benefits under the Plan and is fatal to claim for benefits under Count II of their Amended Complaint. Thus, Plaintiffs' claims against Defendants for Plan benefits as set forth in Count II of the Amended Complaint should be dismissed with prejudice.

### C.  CONCLUSION

WHEREFORE, Defendants respectfully request that Count II of Plaintiffs' Amended Complaint be dismissed with prejudice.

Respectfully submitted,

Date: July 20, 2020

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P. C.**

*/s/ Eric P. Mathisen*
Eric P. Mathisen, admitted *pro hac vice*
56 S. Washington St., Suite 302
Valparaiso, IN 46383
Telephone: 219.242.8666
Facsimile: 219.242.8669
Eric.mathisen@ogletree.com

Patrick R. Martin, AT0010010
Capella Tower
225 South Sixth Street, Suite 1800
Minneapolis, MN  55402
Telephone:  612.339.1818
Facsimile:  612.339.0061
pat.martin@ogletreedeakins.com

**Attorneys for Defendants**

CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on July 20, 2020 and that service of same on all counsel of record will be made by the Court's CM/ECF system as follows:

> Wesley T. Graham
> wtgraham@duncangreenlaw.com
>
> Joseph G. Gamble
> jgamble@duncangreenlaw.com

I further certify that service was made on the following non-registered ECF counsel of record by placing copies of the foregoing in envelopes properly addressed to them and with sufficient first-class postage pre-paid:

> NONE

*/s/ Eric P. Mathisen*